**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **HARMONI TOWERS DEVELOPMENT CO.,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF CHESTERFIELD, MISSOURI**,<br><br>Defendant. | ) )<br>) )<br>) ) Case No. _____<br>) )<br>) )<br>) ) **HOLD FOR SERVICE**<br>) )<br>) )<br>) ) |

**COMPLAINT**

Plaintiff Harmoni Towers Development Co. ("Harmoni" or "Plaintiff") brings this action against the City of Chesterfield, Missouri ("Chesterfield" or the "City") for violations of federal and Missouri law arising from the City's failure to timely act on and, in the alternative, for unlawful denial of Plaintiff's applications to construct a wireless communications facility at 14008 Olive Boulevard, Chesterfield, Missouri.

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Harmoni Towers Development Co. is a limited liability company with its principal place of business at 6210 Ardrey Kell Road, Suite 450 in Charlotte, North Carolina. Harmoni is the successor in interest to the applicant, Harmony Towers LLC, and lessor for the proposed wireless communications facility that is the subject of this action.

2.      Defendant City of Chesterfield, Missouri is a municipal corporation organized under the laws of the State of Missouri. The City exercises zoning and

1

land use authority over the property located at 14008 Olive Boulevard, Chesterfield, Missouri, and regulates the siting of wireless telecommunications facilities within its jurisdiction.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States, specifically 47 U.S.C. § 332(c)(7), which regulates state and local government regulation of the placement, construction, and modification of personal wireless service facilities, and 47 U.S.C. § 253, which addresses preservation of local zoning authority while prohibiting regulations that prohibit or have the effect of prohibiting telecommunications service.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy. Alternatively, this Court has jurisdiction over Plaintiff's state law claims because complete diversity exists between the parties.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the City of Chesterfield is located within this judicial district, the property that is the subject of this action is located within this judicial district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## FACTUAL BACKGROUND

### I.      The Proposed Wireless Facility

6.      Harmoni constructs and maintains telecommunications facilities across the country.

7.     Telecommunications carriers, including, relevant here, T-Mobile, place equipment and antennas on Harmoni's telecommunications facilities to provide telecommunications services in a given area.

8.     On December 6, 2024, Harmoni submitted a Conditional Use Permit (CUP) application (the "CUP Application") to the City of Chesterfield for a proposed wireless communications facility to be located at 14008 Olive Boulevard, Chesterfield, Missouri 63017.

9.     The property at 14008 Olive Boulevard is owned by the St. Louis County Catholic Church Real Estate Corporation (St. Andrew Kim Parish), which has consented to the installation of the wireless facility on its property.

10.     The property owner, the Archdiocese of St. Louis through St. Andrew Kim Parish, expressly consented to the design and location of the proposed tower adjacent to its church building and acknowledged its proximity to the church structure.

11.     The proposed facility consists of a 140-foot monopole wireless support structure with associated equipment compound, to be located on a 0.17-acre tract within a commercial corridor between a church and a gas station.

12.     A stamped engineering letter from Sabre Industries explained that the monopole is designed in accordance with TIA-222-H standards and that the expected buckling behavior of the structure would yield an effective zero-foot fall radius in the unlikely event of structural failure.

## II.    The City's Review Process and Delay

13.    The City issued a first comment letter on January 17, 2025, and a second zoning comment letter on March 12, 2025, requesting additional information regarding the CUP application.

14.    Harmoni responded on March 11, 2025, with a fall zone letter and revised survey, and again in July 2025 with revised surveys, construction drawings, and owner letters addressing the City's comments.

15.    On July 17, 2025, the City requested additional RF (radio frequency) information. On August 5, 2025, the City stated that no further action would be taken on the CUP application without a variance for "height from habitable structure."

16.    The City's requirement for a variance was based on the City's Unified Development Code (UDC), which requires that no new wireless facility be located within a distance greater than or equal to 110% of the height of the structure from the nearest structure designed for occupancy. For a 140-foot pole, this would require a distance of 154 feet from the adjacent church and gas station.

17.    Plaintiff sought a variance to allow the facility to be located 40 feet from the church and 94 feet from the gas station, as compliance with the 154-foot setback requirement is physically impossible on the narrow, 50-foot-wide lot.

## III.    The Variance Application

18.    On August 27, 2025, Harmoni submitted a variance application to the City's Board of Adjustment, accompanied by a letter from counsel explaining the legal basis for the variance request.

19.    The variance application identified the narrow, 50-foot-wide lot as creating practical difficulties, sought reductions from the City's distance-from-habitable-structure rule, and included detailed statements of hardship and network need demonstrating why the variance was necessary.

IV.    **The Board of Adjustment Proceedings**

20.    On October 2, 2025, the Board of Adjustment held a hearing on case BA-04-2025 concerning the variance application (the "Variance Application") for the proposed 140-foot cell tower (the "Proposed Tower") at 14008 Olive Boulevard (the "Property").

21.    The City's planner testified and explained that the variance request was from the minimum distance requirement to the nearest habitable structures (the church to the east and the gas station to the west), that the code requires a setback equal to 110% of tower height (154 feet for a 140-foot tower), and that the applicant sought to reduce the church setback from 154 feet to 40 feet and the gas station setback from 154 feet to 94 feet.

22.    At the hearing, representatives for Harmoni provided RF maps that showed a significant gap in T-Mobile's coverage in the area around the Property. The maps showed that construction of the Proposed Tower at 140 feet tall was necessary and sufficient to remedy that gap in coverage and to ensure proper handoff between facilities in T-Mobile's network of telecommunications towers.

23.    Harmoni also submitted evidence that one of the impacted properties, St. Andrew Kim Parish, provided written consent for the placement of the Proposed Tower on the Property and agreement with the approval of the Variance Application.

5

24. Harmoni submitted evidence that it had sent a letter to the owner of the only other impacted property, a service station, and requested their position on the Variance Application. That owner did not provide any response to Harmoni's letter.

25. Harmoni highlighted critical public safety concerns stemming from the inability to call 911 in the area, a risk compounded by the fact that many local homes no longer have landlines.

26. Plaintiffs presented a fall zone radius letter from an engineer explaining that monopoles are designed to buckle inward rather than fall over, resulting in a zero-foot fall radius.

27. Board Member Whitman criticized the engineering letter for containing "assumptions," but Harmoni's representative responded that contrary evidence would be needed to rebut it.

28. Russell Been, a site acquisition specialist with Cellective Solutions, was sworn in and testified regarding his extensive industry experience since 1999.

29. Mr. Been provided firsthand evidence of the significant coverage gap, testifying that he was personally unable to obtain even a 911 signal at the adjacent gas station.

30. Mr. Been testified that T-Mobile's minimal coverage objective absolutely required the 140-foot height.

31. Mr. Been explained the substantial efforts he had taken to identify an alternative location and testified that there was no alternative location for the Proposed Tower.

32.   Mr. Been further reassured the Board regarding safety, relaying that the manufacturer, Sabre Industries, had no reported tower failures in its history and describing how engineered "release" points cause the structure to bend and collapse on itself rather than fall its full length.

33.   A Board member incorrectly characterized Plaintiff's evidence as merely "anecdotal," ignoring the detailed RF maps and the significant expense incurred to pursue the necessary variance rather than a shorter, by-right facility.

34.   A few nearby residents raised generalized objections regarding the tower's size, proximity to their homes, and unsubstantiated concerns about safety and property values.

35.   Other residents raised generalized health concerns and commented on service from other wireless carriers, which was not relevant to T-Mobile's application to fix its own coverage gap.

36.   None of the objectors would be impacted by the reduction in the setback requirement requested in the Variance Application.

37.   In response to health concerns, Mr. Been proffered an American Cancer Society document which concluded there is no adverse health effect from living near or under a cell tower.

38.   Despite the evidence presented, the Chair claimed Plaintiff had not demonstrated a significant gap from an independent source and requested more substantiation.

39.   Board members agreed to table the matter to allow for direct testimony from T-Mobile's RF engineer, addressing their own concerns that the written materials were hearsay or lacked foundation.

40. The Board unanimously voted to table BA-04-2025 to the next meeting to allow Plaintiff to present additional evidence regarding the definition and proof of a significant gap in coverage.

41. The next hearing was scheduled for November 6, 2025, and the record was left open to receive the RF engineer's testimony and any additional resident input related to that topic.

42. On November 6, 2025, the Board of Adjustment held a second hearing on the Variance Application. At that hearing, Harmoni provided a notarized version of the fall zone letter from the tower engineer, further explaining that the facility is structurally sound and designed to fail with a zero-foot fall radius.

43. At the November 6, 2025 hearing, Plaintiff also provided live, sworn testimony from a radio frequency (RF) engineer for T-Mobile.

44. The RF engineer provided revised RF maps with enhanced color contrast for the Board's ease of review.

45. He explained how the maps were created, that there is a substantial gap in wireless coverage in the area, that there is a narrow search ring for placement of the proposed tower due to the specific coverage needs, and that there is no alternative location for the proposed tower that would adequately address the coverage gap.

46. On November 6, 2025, following the presentation of evidence and testimony, the Board of Adjustment voted on the variance application. The vote was 2 members in favor of approval, 2 members in favor of denial, and 1 member abstaining.

## V.    The City's Failure to Issue a Written Decision

47.    As of the date of this Complaint, the City of Chesterfield has not provided a written decision on the Variance Application.

48.    As of the date of this Complaint, the City has not published minutes from the November 6, 2025 Board of Adjustment meeting online or otherwise made them publicly available.

49.    As of the date of this Complaint, the City has not held a meeting to approve the minutes from the November 6, 2025 Board of Adjustment hearing.

50.    As of the date of this Complaint, the City has not provided any written reasons for denial of the variance application or the CUP application.

51.    As of the date of this Complaint, the City has not taken any final action on the CUP application submitted on December 6, 2024.

## VI.    Timeline and Statutory Deadlines

52.    The CUP application was filed on December 6, 2024. As of the date of this Complaint, more than 400 days have elapsed since the CUP application was submitted, and the City has not issued a final decision on that application.

53.    The variance application was filed on August 27, 2025. As of the date of this Complaint, more than 140 days have elapsed since the variance application was submitted, and the City has not issued a final written decision on that application.

54.    Under RSMo § 67.5096, when an applicant submits an application for a new wireless support structure, the authority must review the application for completeness within 30 days, make a final decision on the application within

9

120 days of receiving the application, and advise the applicant in writing of its final decision.

55.    The deadline for providing a written, final decision on the Variance Application was December 25, 2025.

56.    RSMo § 67.5096 further provides that if the authority fails to act on an application for a new wireless support structure within 120 days of receiving the application (absent a mutually agreed extension), the application "shall be deemed approved."

57.    The City has not acted on either the CUP application or the variance application within the 120-day period required by Missouri law.

58.    The City has not requested, and Plaintiff has not agreed to, any extension of the 120-day deadline.

## APPLICABLE LAW

VII.    **The Telecommunications Act of 1996**

59.    Section 332(c)(7) of the Communications Act, 47 U.S.C. § 332(c)(7), preserves local zoning authority over the placement, construction, and modification of personal wireless service facilities, but prohibits state or local regulation that "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services."

60.    Section 332(c)(7)(B)(ii) requires that state or local governments act on applications for wireless facilities "within a reasonable period of time after the request is duly filed."

61.    Section 332(c)(7)(B)(iii) provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct,

or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

62.     Section 332(c)(7)(B)(v) provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction," and that such court "shall hear and decide such action on an expedited basis."

VIII.    **The Missouri Wireless Siting Act**

63.     RSMo § 67.5096 governs the review and approval process for wireless facility applications in Missouri.

64.     As noted above, Section 67.5096 requires that the authority, within 120 days of receiving an application for a new wireless support structure, review the application for completeness, make a final decision on the application, and advise the applicant in writing of its final decision.

65.     In addition to providing a strict deadline to issue a final decision on an application, RSMo § 67.5094(1) and (2) prohibit an authority from requiring or evaluating an applicant's business decisions about designed service, demand, or quality, and from evaluating applications based on the availability of other potential locations (except for a limited collocation statement for new structures).

66.     RSMo § 67.5094(6) prohibits authorities from establishing or enforcing regulations concerning RF signal strength or the adequacy of service quality.

11

IX.    **Missouri Board of Adjustment Statute**

67.    RSMo § 89.090 authorizes boards of adjustment to grant variances where practical difficulties or unnecessary hardship exist, while securing public safety and welfare and substantial justice.

X.    **Missouri Administrative Procedure Act**

68.    RSMo § 536.100 provides that a party aggrieved by a final decision in a contested case is entitled to judicial review. The statute further provides that failure to issue a final decision within 60 days of the conclusion of a hearing or 180 days after a written request for a decision results in exhaustion of administrative remedies and permits immediate judicial review.

**COUNT I**
**DEEMED APPROVAL UNDER RSMO § 67.5096**

69.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

70.    RSMo § 67.5096 requires that an authority make a final decision on an application for a new wireless support structure within 120 days of receiving the application and advise the applicant in writing of its final decision.

71.    Section 67.5096 provides that if the authority fails to act on such an application within 120 days (absent a mutually agreed extension), the application "shall be deemed approved."

72.    Plaintiff submitted the CUP application on December 6, 2024. More than 400 days have elapsed since that date, far exceeding the 120-day deadline.

73.    Plaintiff submitted the Variance Application on August 27, 2025. More than 140 days have elapsed since that date, exceeding the 120-day deadline.

74.     The City has not issued a final written decision on either the CUP application or the variance application.

75.     The City has not requested, and Plaintiff has not agreed to, any extension of the 120-day deadline.

76.     The City's failure to act within 120 days constitutes a failure to act under § 67.5096, triggering the deemed approval provision.

77.     Under § 67.5096, both the CUP application and the Variance Application are deemed approved by operation of law.

78.     The City's failure to issue the necessary permits and approvals following the deemed approval of the applications violates Missouri law and deprives Plaintiff of its statutory rights.

79.     Plaintiff is entitled to judicial relief, including an order declaring the applications deemed approved and compelling the City to issue all permits and approvals necessary to construct and operate the wireless facility.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor on Count I and grant the relief set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(iii)**
**FAILURE TO PROVIDE WRITTEN DENIAL SUPPORTED BY**
**SUBSTANTIAL EVIDENCE**

80.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

81.     Section 332(c)(7)(B)(iii) of the Communications Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny

a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

82.    On November 6, 2025, the Board of Adjustment voted 2-2-1 on the variance application, with 2 members voting for approval, 2 members voting for denial, and 1 member abstaining.

83.    The City has not issued a written decision stating the reasons for denial of the variance application.

84.    The City has not published minutes from the November 6, 2025 Board of Adjustment meeting.

85.    The City has not held a meeting to approve the minutes from the November 6, 2025 hearing.

86.    The City has not provided any written reasons explaining the basis for the Board's vote or identifying the substantial evidence supporting a denial.

87.    Without a written decision stating reasons for denial, there can be no substantial evidence in a written record supporting the denial.

88.    The absence of a written decision with reasons for denial violates the express requirements of 47 U.S.C. § 332(c)(7)(B)(iii).

89.    Alternatively, even if the 2-2-1 vote is construed as a denial (which Plaintiff disputes), the City's failure to provide a written decision supported by substantial evidence in a written record violates federal law and renders any purported denial unlawful.

90.    The City's violation of § 332(c)(7)(B)(iii) has adversely affected Plaintiff by preventing it from constructing and operating the wireless facility necessary to provide wireless services in the area.

91.    The Plaintiff will be irreparably harmed if it cannot construct the Proposed Tower and remedy the substantial gap in T-Mobile's coverage.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in its favor on Count II and grant the relief set forth in the Prayer for Relief below.

**COUNT III**
**EFFECTIVE PROHIBITION IN VIOLATION OF 47 U.S.C. §**
**332(c)(7)(B)(i)(II)**

92.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93.    Section 332(c)(7)(B)(i)(II) of the Communications Act provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

94.    Plaintiff provided extensive evidence demonstrating the need for the proposed wireless facility, including:

a. Testimony from an RF engineer who created coverage maps showing a substantial gap in wireless coverage in the area;

b. Evidence that there is a narrow search ring for placement of the proposed tower due to the specific coverage needs and network design requirements; and

c. Evidence that there is no alternative location for the proposed tower that would adequately address the coverage gap.

95. The City's UDC distance requirements, which mandate that wireless facilities be located at least 154 feet from any habitable structure for a 140-foot tower, combined with the City's refusal to grant the necessary variance, effectively prohibit the provision of needed wireless coverage and capacity in the area near the Property.

96. The proposed facility is necessary to fill a significant gap in wireless coverage and to provide adequate wireless services to the area.

97. The RF engineer testified that the proposed height of 140 feet is necessary to meet network objectives and that there are no alternative locations that would adequately serve the coverage area.

98. The City's application of its setback requirements to the proposed facility, combined with its failure to grant the necessary variance despite the practical impossibility of compliance on the narrow lot, has the effect of prohibiting Plaintiff from providing wireless services in the area.

99. The City's actions constitute an effective prohibition of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

100. The City's violation of § 332(c)(7)(B)(i)(II) has adversely affected Plaintiff by preventing it from constructing and operating the wireless facility necessary to provide wireless services in the area.

101. The Plaintiff will be irreparably harmed if it cannot construct the Proposed Tower and remedy the substantial gap in T-Mobile's coverage.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor on Count III and grant the relief set forth in the Prayer for Relief below.

## COUNT IV
## VIOLATIONS OF RSMO § 67.5094

102. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

103. RSMo § 67.5094(1) and (2) prohibit an authority from requiring or evaluating an applicant's business decisions about designed service, customer demand, or service quality, and from basing decisions on the availability of other potential locations (except for a limited collocation statement for new structures).

104. RSMo § 67.5094(6) prohibits authorities from establishing or enforcing regulations concerning RF signal strength or the adequacy of service quality.

105. The City's review of the applications improperly considered and evaluated factors prohibited by § 67.5094, including:

   a. The designed service area and coverage objectives;

   b. The adequacy of wireless service in the area;

   c. The availability of alternative locations for the facility; and

   d. RF signal strength and service quality issues.

106. The record reflects that the City insisted on evaluating height and service adequacy issues and alternative locations, contrary to the prohibitions in § 67.5094.

107. The City's consideration of these prohibited factors violates Missouri law and independently invalidates any adverse action taken on the applications.

17

108. The City's violations of § 67.5094 have adversely affected Plaintiff by subjecting its applications to unlawful review criteria and preventing approval of the necessary permits.

109. The Plaintiff will be irreparably harmed if it cannot construct the Proposed Tower and remedy the substantial gap in T-Mobile's coverage.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor on Count IV and grant the relief set forth in the Prayer for Relief below.

**COUNT V**
**FAILURE TO ISSUE FINAL DECISION**
**JUDICIAL REVIEW UNDER RSMO § 536.100**

110. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

111. RSMo § 536.100 provides that a party aggrieved by a final decision in a contested case is entitled to judicial review. The statute further provides that failure to issue a final decision within 60 days of the conclusion of a hearing or 180 days after a written request for a decision results in exhaustion of administrative remedies and permits immediate judicial review.

112. The Board of Adjustment held a hearing on the variance application on November 6, 2025.

113. More than 60 days have elapsed since the November 6, 2025 hearing.

114. The City has not issued a final written decision on the variance application.

115. The City has not approved or published minutes from the November 6, 2025 hearing.

116. Alternatively, if the City's action is construed as a denial of Harmoni's application (which Harmoni disputes), that denial is unlawful and must be reversed because it is: (a) unsupported by competent and substantial evidence upon the whole record; (b) arbitrary, capricious, or unreasonable; and (c) an abuse of discretion.

117. Under § 536.100, Plaintiff has exhausted its administrative remedies and is entitled to immediate judicial review.

118. The City's failure to issue a timely final decision violates Missouri law and deprives Plaintiff of its right to a final determination on its applications.

119. Plaintiff is entitled to judicial review and relief due to the City's failure to issue a timely final decision.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor on Count V and grant the relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare that the CUP application and Variance Application are deemed approved under RSMo § 67.5096 due to the City's failure to act within 120 days;

B. Issue a permanent injunction ordering the City of Chesterfield to issue all permits, approvals, and authorizations necessary for Plaintiff to construct and operate the wireless communications facility at 14008 Olive Boulevard in accordance with the applications;

C. Alternatively, declare that the City's failure to issue a written denial supported by substantial evidence in a written record violates 47 U.S.C. §

332(c)(7)(B)(iii), and order the City to approve the applications and issue all necessary permits and approvals;

D. Declare that the City's actions unlawfully prohibit or have the effect of prohibiting the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), and order the City to approve the applications and issue all necessary permits and approvals;

E. Declare that the City violated RSMo § 67.5094 by evaluating prohibited factors in its review of the applications, and order the City to approve the applications and issue all necessary permits and approvals;

F. Grant judicial review relief under RSMo § 536.100 and order the City to approve the applications and issue all necessary permits and approvals;

G. Grant Plaintiff such other and further relief as the Court deems just and proper; and

J. Hear and decide this action on an expedited basis as required by 47 U.S.C. § 332(c)(7)(B)(v).

January 16, 2026                              Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: /s/ *Sasha D. Riedisser*
Eric D. Martin. #47558
Sasha D. Riedisser, #71141
Norton Rose Fulbright US LLP
8001 Forsyth Blvd., Suite 800
St. Louis, Missouri 63105
Telephone: (314) 505-8800
Facsimile: (314) 505-8899
Eric.martin@nortonrosefulbright.com
sasha.riedisser@nortonrosefulbright.com

*Attorneys for Plaintiff*

20